EDMUND H. KERR and LORETTA KERR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JULIUS H. SEDLMAYR and JANE R. SEDLMAYR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kerr v. Commissioner
Docket Nos. 9977-76, 10112-76.
United States Tax Court
T.C. Memo 1980-226; 1980 Tax Ct. Memo LEXIS 356; 40 T.C.M. (CCH) 549; T.C.M. (RIA) 80226; June 30, 1980, Filed Elliott Manning, for the petitioners in dkt. No. 9977-76. William E. Carter, for the petitioners in dkt. No. 10112-76. Jack H. Klinghoffer, for the respondent. WILBUR
MEMORANDUM EINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioners' Federal income taxes [1] as follows: Petitioner
Year
Deficiency
Edmund H. Kerr and
1973
$ 2,434
Loretta Kerr
Julius H. Sedlmayr and
1972
2,217
[2]Jane R. Sedlmayr 1973
2,440
The sole remaining issue for decision is whether certain *358 payments made under the terms of a written separation agreement are includable in the gross income of petitioners Sedlmayr and therefore deductible by petitioners Kerr or whether the payments are not includable in the Sedlmayr's gross income and thus are not deductible by the Kerrs.
FINDINGS OF FACT All of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Edmund H. Kerr and Loretta Kerr (hereinafter petitioners Kerr or Edmund or Loretta) filed a joint Federal income tax return for the taxable year 1973. At the time the petition in this case was filed, petitioners Kerr were residents of Cedar Hill, Greenwich, Connecticut. Julius H. and Jane R. Sedlmayr (hereinafter petitioners Sedlmayr or Julius or Jane) filed joint Federal income tax returns for the taxable years 1972 and 1973. At the time of filing their petition in this case, petitioners Sedlmayr were residents of New York, New York. Jane and Edmund were married on October 30, 1954. Two children were born of the marriage: Susan Jane, born August 16, 1956, and Daniel Richard, born December 16, 1958. On April 22, 1968, Jane and Edmund entered *359 into a written separation agreement which provides in pertinent part: Section 1.definitions.
* * *
(c) As used in this Agreement the term "a limiting event" with respect to one of the Children shall mean the first to occur of the following events: (a) the death of such Child, (b) the attainment by such Child of his or her 21st birthday after having completed his or her education, (c) the completion of his or her education after his or her 21st birthday, and (d) his or her marriage. (d) As used in this Agreement, the term "a final limiting event with respect to the Children" shall mean a limiting event with respect to one of the Children that occurs after a limiting event has occurred with respect to the other of the Children.
* * *
Section 4.Support and Maintenance. As and for the support and maintenance of the Wife (and as complete satisfaction of any obligation of the Husband's [sic] to support and maintain the Wife), and (subject to the Husband's [sic] additional obligations with respect to the education of the Children set out in Section 5 below) as and for the care, maintenance, support, and education of the Children: * * *
II. For *360 each calendar month after April 1968, so long as the Husband and Wife are both alive and the Wife has not remarried following a divorce of the Husband and Wife, the Husband shall pay to the Wife on the first day of such month a sum determined as follows: such sum shall be $1,646 until such time as there occurs a limiting event with respect to one of the Children, then $1,396 thereafter until there occurs a limiting event with respect to the other of the Children, and then $1,146 thereafter (and if limiting events occur with respect to both Children simultaneously, $1,146 thereafter). * * *
IV. If during the lifetime of the Husband the Wife remarries following a divorce of the Husband and the Wife, and if at the time of such remarriage there has not yet occurred a final limiting event with respect to the Children, then thereafter, commencing with the calendar month following such remarriage, and for each Child with respect to whom a limiting event has not yet occurred, the Husband shall pay to the Wife the sum of $250 on the first day of each and every month until the earlier of (1) the occurrence of a limiting event with respect to that Child and (2) the death of the first *361 to die of the Husband and the Wife. V. The Husband's obligation to make payments to the Wife under this Section 4 shall cease on the earlier of (1) the date of the death of the first to die of the Husband and the Wife, and (2) the date on which occurs the last to occur of the following events (a) a final limiting event with respect to the Children and (b) the remarriage of the Wife following a divorce of the Husband and the Wife. Jame and Edmund were divorced pursuant to a Mexican divorce decree dated April 30, 1968. The separation agreement was incorporated by reference in, but not merged with, the divorce decree. Jane was remarried, to Julius on October 13, 1971. Edmund paid to Jane $6,000 in each of the tax years 1972 and 1973 pursuant to the terms of the separation agreement. Jane maintained custody of the two children of her prior marriage, Susan Jane and Daniel Richard, during the years 1972 and 1973. Respondent determined a Federal income tax deficiency for the tax year 1973 against petitioners Kerr. Respondent disallowed deduction of the $6,000 payment to Jane mentioned above, disallowed $422 of the amount claimed as a charitable contribution and disallowed a *362 $727 casualty loss deduction. petitioners Kerr concede that their total deduction for charitable contributions for the tax year is $2,265 and that they are not entitled to the casualty loss deduction. Respondent determined a Federal income tax deficiency against the petitioners Sedlmayr for the tax years 1972 and 1973. Respondent determined that for each of those years petitioners had failed to include in gross income the $6,000 annual payments from Edmund to Jane made under the terms of the separation agreement mentioned above. OPINION At issue here are two payments of $6,000 each made during the years 1972 and 1973, respectively, from Edmund to Jane pursuant to the terms of a written separation agreement. Section 71(a) [3] sets forth the general rules governing inclusion of periodic payments in the income of the recipient spouse. Section 215(a) [4] allows a deduction to the payor spouse to the extent the payment is included in the gross income of the recipient spouse under section 71. Section 71(b) provides that a recipient need not include in gross income payments which "the terms of the decree, instrument or agreement fix, in terms of an amount of money or a part of the *363 payment, as a sum which is payable for the support of minor children of the husband." It follows that if an amount is excludable from the gross income of the recipient under section 71(b), it is not deductible by the payor spouse under section 215. *364 Decision of this case thus turns on what is meant by the language of section 71(b). In , the Supreme Court dealt with a written agreement providing that when any of the three children of the parties married, became emancipated, or died, the periodic payments to the wife would be reduced by one-sixth of the payments which would otherwise accrue, and further terminated the entire payment in the event of the wife's remarriage. The Commissioner argued that the language sufficiently identified one-half (one-sixth multipled by the number of children) of the periodic payments as having been payable for the support of the taxpayer's minor children in that the payments were to be reduced in a fixed amount upon the occurrence of certain events with respect to the children. The Court held that the instrument did not "fix" the amount or portion of the payment to be used for support of the children as required by statute: This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The *365 statutory requirement is strict and carefully worded.It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax.It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. * * *
Here the agreement does not so specifically provide. On the contrary, it calls merely for the payment of certain monies to the wife for the support of herself and the children. [.] [Emphasis supplied.] In the instant case, Section 4 of the separation agreement recites at the outset that the payments are to be made for the support of the wife and the children. While we recognize that the wife may serve as "merely a conduit" for child support payments from the husband to the children, , affd. , the payment herein is not severable. Unlike Emmons, there is here no obligation, legally binding or otherwise, which commits the wife to expend any portion of the sums received for the support of the children. *366 Thus it is impossible for us to find that any portion of the payment is specifically designated for the support of the children. Petitioners Sedlmayr urge that paragraph II of section 4 of the separation agreement, when read in conjunction with paragraph IV, reveals two distinct "streams of payment." The first "stream" set out in paragraph II provides for payments prior to the wife's remarriage, reducible upon the death or emancipation of each child. Petitioners Sedlmayr appear to concede that this paragraph standing alone is essentially identical with the facts of lester. A mere reduction by specific amounts upon the happening of certain events relating to the children does not "fix" the amount of child support as the amount allocable to child support can only be determined through inference. However petitioners Sedlmayr read further and point out that paragraph IV operates to reduce the payments due after the remarriage of the wife, and that the reduced amount payable upon remarriage of the wife is the amount attributable to child support. Thus they argue that paragraph IV delineates a second stream of payment that is specifically for the children's support. To bolster *367 this argument, petitioners Sedlmayr refer us to the language of paragraph IV providing for the continuation, in the event the wife remarries, of certain payments by the husband "for each child." However, paragraph IV is no more a specific designation within the meaning of Lester than paragraph II, but simply an alternative formulation of the same thought. There are complementary ways of expressing the same concept that permit anyone to infer the weight given to the childrens' needs in arriving at the total payment to be made. But they do not "fix" or "specifically designate" an amount for child support within the meaning of Lester.[5]
Reading both provisions of section 4 (paragraphs II and IV) together, we are still constrained to reach the same result, for we are confronted with essentially the same circumstances that the Supreme Court *368 dealt with so definitively in Lester. Petitioners Sedlmayr ask us to examine local law which they claim adopts a rule under which a husband is not obligated to pay support to his former wife following her remarriage unless the agreement specifically so obligates him. Whatever this rule may indicate as to the parties' intentions herein, it is clear that it is the agreement itself which must specifically designate the payments, for the statute was intended to produce uniformity regardless of variances in the laws of different states. . , affd. , cert. denied involved a rider which specifically stated that $7,000 was to be paid "for the benefit of the two children." There is no such specificity here. , affg. a Memorandum Opinion of this Court, did not involve any taxable period subsequent to the petitioner's remarriage. While certainly there is a difference as to the computation of the payments before and after remarriage, *369 no provision of this agreement changes the character of such payments. There is no doubt that the parties to this agreement intended to provide payments to be used for the support of the children. Since, however, that purpose is inexorably intertwined with the provision of support and maintenance for the former wife, there is no specific designation as to what amounts are to be expended for the childrens' benefit. [If] there is to be certainty in the tax consequences of such agreements the allocations to child support made therein must be "specifically designated" and not left to determination by inference or conjecture. We believe that the Congress has so demanded * * *. After all, the parties may for tax purposes act as their best interests dictate, provided, as that section requires, their action be clear and specific. Certainly the Congress has required no more and expects no less. [.] Decision will be entered for the petitioner in dkt. No. 9977-76.
Decision will be entered for the respondent in dkt. No. 10112-76.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, unless otherwise indicated.↩
2. These cases were consolidated for trial, briefing, and opinion as resolution of the issue involved herein is mutually determinative of the two cases.↩
3. SEC. 71.ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) GENERAL RULE.-- (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) WRITTEN SEPARATION AGREEMENT.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. * * * (b) PAYMENTS TO SUPPORT MINOR CHILDREN.--Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support. ↩
4. SEC. 215. ALIMONY, ETC., PAYMENTS.
(a) GENERAL RULE.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.↩
5. We also note that the introductory language of section 4 in effect states that each payment, the terms and conditions of which are detailed, is to be used for the support of both the wife and the children. This language is followed by a colon indicating that each and every subsequent paragraph of section 4 is being referred to.↩